UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| NAWRADIN KHAWAJA,<br><br>Petitioner,<br><br>v.<br><br>ANDRE QUINONES et al.,<br><br>Respondents. | CASE NO. 2:26-cv-04374-LK<br><br>ORDER GRANTING IN PART AND DENYING IN PART PETITION FOR WRIT OF HABEAS CORPUS |

This matter comes before the Court on Petitioner Nawradin Khawaja's Petition for Writ of Habeas Corpus. Dkt. No. 1. For the reasons described below, the Court grants in part and denies in part the petition.[1]

## I. INTRODUCTION

Petitioner is a native and citizen of Afghanistan who "served as a Security Officer for the U.S. Government at the Department of State Annex in Afghanistan for nearly eleven years, from October 2010 until the collapse of the Afghan government in August 2021." Dkt. No. 1 at 1, 4. On September 4, 2021, the U.S. government "evacuated him" from Afghanistan and paroled him into the country at "Dulles International Airport under Operation Allies Refuge." *Id.* at 2. On January

[1] The Court declines to hold an evidentiary hearing because the record is sufficient for adjudication of the petition. *See Owino v. Napolitano*, 575 F.3d 952, 954 (9th Cir. 2009) (holding that "the district court must hold an evidentiary hearing" where "the record is insufficient to decide whether [the petitioner's] detention is authorized by statute").

19, 2024, "U.S. Embassy Kabul Chief of Mission approved his Afghan Special Immigrant Visa ('SIV') petition, finding that he has experienced or is experiencing an ongoing serious threat as a result of his U.S. Government employment." *Id.* He then applied for a green card; his application has been pending with U.S. Citizenship and Immigration Services ("USCIS") since January 31, 2024. *Id.* Since his arrival into the country, Petitioner has lived in Utah and California, where he worked, paid taxes, and studied English; he has no criminal record. *Id.*

In October 2026, Petitioner "mistakenly took an exit toward the Canadian border near Blaine, Washington." *Id.* He was arrested by U.S. Customs and Border Patrol, which initially processed him for expedited removal, but after an asylum officer found that he has a credible fear of prosecution, served him with a Notice to Appear labeling him as an "arriving alien." *Id.*; *see* Dkt. No. 1-2 at 31. Since his arrest, he has been detained by U.S. Immigration and Customs Enforcement ("ICE") at the Northwest ICE Processing Center ("NWIPC") in Tacoma, Washington. Dkt. No. 1 at 2–3.

On November 10, 2026, Petitioner filed a petition for a writ of habeas corpus. Dkt. No. 1. On November 12, 2026, the Court issued its standard scheduling order directing Respondents to show cause by November 27, 2026 why the writ should not be granted. Dkt. 4; *see also* 28 U.S.C. § 2243 (requiring the custodian to "show cause why the writ should not be granted" and certify the "true cause" of the detention). On November 18, 2026, Respondents[2] filed an "Abbreviated Return," which acknowledges that "immigration officials re-detained Petitioner after previously having been released from immigration detention" and requests that the Court "decide whether a

[2] Although the warden of the NWIPC has not appeared in this case, (1) the purpose of naming the petitioner's custodian is to effectuate injunctive relief where appropriate, *see Rumsfeld v. Padilla*, 542 U.S. 426, 435 (2004) (the custodian has "the power to produce the body of [the petitioner] before the court or judge," such that "he may be liberated if no sufficient reason is shown to the contrary" (citation modified)); and (2) federal respondents often represent the warden's interests, as they do in this case, *see Doe v. Garland*, 109 F.4th 1188, 1196 (9th Cir. 2024) ("Even in cases where private contract wardens are named as respondents, the government can and has stepped in to defend its interest in keeping petitioners detained.").

writ should be granted based on the Petition and related filings." Dkt. No. 7 at 1. The filing does not substantively oppose the petition.

## II. DISCUSSION

Under the Due Process Clause of the Fifth Amendment to the United States Constitution, no person shall be "deprived of life, liberty, or property, without due process of law[.]" U.S. Const. amend. V. "[T]he Due Process Clause applies to all 'persons' within the United States, including [noncitizens], whether their presence here is lawful, unlawful, temporary, or permanent." *Zadvydas v. Davis*, 533 U.S. 678, 693 (2001).

Based on the petition and records attached thereto, it appears that Petitioner was paroled into the country pursuant to 8 U.S.C. § 1182(d)(5)(A). Dkt. No. 1 at 6; Dkt. No. 1-2 at 31. As described in this Court's order in *Singh v. Mullin*, 2:26-cv-04112-LK, 2026 WL 3569448, at *2–4 (W.D. Wash. Nov. 20, 2026), certain process is due to noncitizens like Petitioner when the government terminates parole under this section of the Immigration and Nationality Act. Among other things, Petitioner asserts that Respondents violated his right to due process under the Fifth Amendment when they "deprived him of liberty without notice, a hearing, or any individualized finding of danger or flight risk[.]" Dkt. No. 1 at 15. He seeks immediate release or, alternatively, a bond hearing before a neutral decisionmaker at which the government bears the burden of proving by clear and convincing evidence that he is a danger or a flight risk. *Id.* at 16. He also seeks a permanent injunction preventing Respondents from "re-detaining him without first providing at least seven days' written notice and a hearing before a neutral decisionmaker at which the government must prove, by clear and convincing evidence, a material change in circumstances showing that he is a danger or a flight risk[.]" *Id.* at 16–17. As noted above, Respondents do not substantively oppose his position and instead request that the Court "decide whether a writ should be granted based on the Petition and related filings." Dkt. No. 7 at 1.

Pursuant to the principle of party presentation, courts "rely on the parties to frame the issues for decision[.]" *United States v. Sineneng-Smith*, 590 U.S. 371, 375 (2020) (citation modified). In other words, "our system is designed around the premise that [parties represented by competent counsel] know what is best for them, and are responsible for advancing the facts and argument entitling them to relief." *Id.* at 375–76 (citation modified). Because Respondents have not rebutted Petitioner's contention that the government failed to afford him the process due to him upon revocation of his liberty, the Court concludes that Respondents have failed to carry their burden to show why a writ of habeas corpus should not be granted. *See Gabriel v. Bondi*, No. 25-CV-4298 (KMM/EMB), 2025 WL 3443584, at *6 (D. Minn. Dec. 1, 2025) ("Without any suggestion that such a determination [as that required under the statute and regulation] occurred, Respondents could not have complied with § 1182(d)(5)(A) and Part 212.5(e)(2)(i) in revoking Petitioner's parole," and accordingly, "the revocation, and[] . . . Petitioner's detention[] is unlawful.").[3]

However, Petitioner still bears the burden of demonstrating to the Court that a permanent injunction barring his re-detention absent certain process is warranted. *Cummings v. Connell*, 316 F.3d 886, 897 (9th Cir. 2003) ("In seeking a permanent injunction, the moving party must convince the court that relief is needed: 'The necessary determination is that there exists some cognizable danger of recurrent violation, something more than the mere possibility which serves to keep the

[3] *See also Delfin-Ricardo v. Noem*, No. 26-CV-136-RSH-BJW, 2026 WL 353357, at *2 (S.D. Cal. Feb. 9, 2026) ("Courts have determined, in cases where DHS fails to follow its own regulations in revoking humanitarian parole, that the resulting detention is unlawful and the petitioner's release should be ordered."); *Savane v. Francis*, 801 F. Supp. 3d 483, 491–92 (S.D.N.Y. 2025) ("Respondents' revocation of . . . parole under § 1182(d)(5)(A) without any process violated Petitioner's due process rights . . . because [Respondents] did not comply with the statutorily required process for revoking that parole."); *Orellana v. Francis*, No. 25-CV-04212 (OEM), 2025 WL 2402780, at *7 (E.D.N.Y. Aug. 19, 2025) (reasoning that "by failing to lawfully revoke [Petitioner's] parole, Respondents lacked the authority to arrest Petitioner"), *reconsideration denied in relevant part*, No. 25-CV-04212 (OEM), 2025 WL 2822640, at *4 (E.D.N.Y. Oct. 3, 2025) (finding again that "by failing to lawfully revoke [Petitioner's] parole, Respondents lacked the authority to arrest Petitioner" and reasoning "[a]s such, the revocation of Petitioner's parole was unlawful and his resulting detention invalid"); *Zavorin v. Wamsley*, No. 2:26-CV-00173-DGE, 2026 WL 309733, at *4 (W.D. Wash. Feb. 5, 2026) (granting habeas petition when Respondents revoked Petitioner's humanitarian parole without following the procedural requirements set forth in 8 U.S.C. § 1182(d)(5)(A) and 8 C.F.R. § 212.5(e)(2)(i)).

case alive.'" (quoting *United States v. W.T. Grant Co.,* 345 U.S. 629, 633 (1953)). Nowhere in Petitioner's petition does he allege that re-detention is likely if he were to be released. Without argument or evidence that his re-detention is likely to occur, Petitioner's request constitutes nothing more than a "mere possibility" of harm that does not entitle him to relief. *Id.* For these reasons, the Court denies his request for injunctive relief.

## III. CONCLUSION

For the foregoing reasons, the Court GRANTS IN PART and DENIES IN PART the petition, Dkt. No. 1, and ORDERS as follows:

1. Respondents shall release Petitioner from custody and return his property to him within 24 hours of this Order, subject to terms consistent with his prior grant of parole or otherwise consistent with 8 U.S.C. § 1182(d)(5) and its implementing regulations;
2. Petitioner's counsel shall file a status report by November 30, 2026, confirming that he has been released;
3. Any fee petition should be filed within the deadlines set by the Equal Access to Justice Act, 28 U.S.C. § 2412. *See Michelin v. Warden Moshannon Valley Corr. Ctr.*, 169 F.4th 418, 432 (3d Cir. 2026) (the Equal Access to Justice Act authorizes the award of attorney's fees to petitioners who prevail against the Government in immigration habeas actions); *Daley v. Ceja*, 158 F.4th 1152, 1162 (10th Cir. 2025) (same); *Nadarajah v. Holder*, 569 F.3d 906 (9th Cir. 2009) (granting fee award to immigration detainee who prevailed on habeas petition); *Petition of Hill*, 775 F.2d 1037, 1041 (9th Cir. 1985) (reasoning that an award of fees under EAJA was not necessarily foreclosed for a habeas petition brought by "a nonresident [noncitizen]" in the immigration context). Time spent on work that is "excessive, redundant, or otherwise unnecessary" is not compensable. *Gates v. Deukmejian*, 987 F.2d 1392, 1397 (9th Cir. 1992) (citation

modified). For example, attorneys may not seek compensation for time spent developing a habeas petition template when such template was merely re-used in the instant proceeding; only the time spent dedicated to this proceeding is compensable. *See Eve Nevada, LLC v. Derbyshire*, No. 21-0251-LK, 2022 WL 279030, at *10 (W.D. Wash. Jan. 31, 2022).

Dated this 25th day of November, 2026.

Lauren King
United States District Judge